DAVID RIVERA OTERO y OTROS, demandantes y recurridos, *v.* CASCO SALES COMPANY, INC., JOSÉ A. SANTIAGO LÓPEZ,· JOSÉ A. RIVERA, demandados y peticionarios; BORINQUEN SWIMMING POOLS, INC., tercera demandada.

*Números:* O-84-303, O-84-308    *Resueltos:* 17 de octubre de 1984

*Charles de Mier LeBlanc,* de *Miranda Cárdenas, De Corral & Rodríguez,* abogados de los peticionarios; *Jaime Luciano Jiménez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

En *González* v. *Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977), resolvimos que un vehículo de arrastre, por no tener fuerza propulsora propia, no es un vehículo de motor; pero una vez es enganchado a un camión remolcador, ambos —el arrastre y el remolcador— constituyen una sola unidad móvil y deben ser considerados como un vehículo de motor a los fines de la Sec. 13-101 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1751. Esta norma no está limitada a los arrastres diseñados para llevar carga. Aplica por igual a todo vehículo rodante que no tenga fuerza motriz propia cuando es ayuntado a un vehículo de motor para ser desplazado de un lugar a otro.

I

El 28 de febrero de 1980 ocurrió un accidente en que varios automóviles que estaban estacionados fueron chocados por un compresor de aire que se desprendió de su enganche con un vehículo marca Ford que lo remolcaba. El compresor pertenecía a Casco Sales Co., Inc. que lo había cedido en arrendamiento a Borinquen Swimming Pools, Inc. El vehículo remolcador pertenecía a José A. Rivera, presidente de la arrendataria y era conducido por un empleado de ésta.

El 3 de marzo de 1981 los dueños de los automóviles chocados instaron demanda ante el Tribunal de Distrito, Sala de Río Piedras, contra Casco Sales Co., Inc., José A. Rivera, y el conductor del vehículo remolcador, en reclamación de resarcimiento por los daños ocasionados a sus respectivos automóviles. Casco Sales contestó la demanda y negó responsabilidad. Presentó demanda de coparte contra Rivera y demanda de tercero contra Borinquen Swimming Pools. Rivera, por su parte, negó responsabilidad y opuso la defensa afirmativa de prescripción. Borinquen Swimming Pools compareció a su vez, negó responsabilidad y planteó también la defensa de prescripción. La acción contra el con-

ductor del vehículo remolcador fue desistida por insuficiencia de emplazamiento. ,

Se estipuló en conferencia con antelación al juicio que la prescripción fue oportunamente interrumpida en cuanto a Casco Sales en virtud de reclamación extrajudicial. Fue el pleito a juicio, luego de lo cual el tribunal de distrito dictó sentencia en que declaró sin lugar la demanda y por ende desestimó la demanda de tercero. Concluyó que al ocurrir el accidente el vehículo Ford era conducido a exceso de velocidad y ello ocasionó que el compresor se desprendiera al saltar sobre un lomo que había en la carretera. Declaró prescrita la acción en cuanto a Rivera, concluyó que no hubo prueba de desperfecto en el enganche del compresor y se negó a aplicar la doctrina de *res ipsa loquitur* que fuera invocada por los demandantes.

Los demandantes apelaron al Tribunal Superior. Éste revocó amparándose en lo resuelto en *González* v. *Seatrain Lines of P.R.*, supra. Los demandados, Rivera, Casco Sales y la tercera demandada Borinquen Swimming Pools, han recurrido mediante peticiones de *certiorari*. Consolidamos sus recursos y, para examinar si la doctrina de *González* v. *Seatrain Lines of P.R.*, supra, es aplicable a hechos como los aquí presentes, requerimos que los demandantes recurridos mostraran causa por la cual no debamos expedir y revisar la sentencia recurrida. Éstos han comparecido.

## II

Dos cuestiones plantean las partes peticionarias: (a) si puede considerarse que el compresor de aire, al ser ayuntado al vehículo Ford, vino a constituir con éste una sola unidad, es decir, un vehículo de motor, a los fines de la responsabilidad de sus respectivos dueños por los daños causados; y (b) si la causa de acción de los demandantes estaba prescrita en cuanto al codemandado Rivera y en cuanto a la tercera demandada Borinquen Swimming Pools.

—A—

Bajo la Sec. 13-101 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1751, "[e]l dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño".

En *González* v. *Seatrain Lines of P.R.*, supra, consideramos el caso específico de dos vehículos —un vehículo de arrastre y un camión remolcador— ambos diseñados para complementarse entre sí, al unirse, para facilitar el transporte de carga. El arrastre, como tal, no es un vehículo de motor porque carece de fuerza motriz propia. Su propósito de transportar carga de un sitio a otro se logra al ser unido al camión que suple la fuerza motriz. Ambos son equipados por sus fabricantes con mecanismos de enganche que les son particulares para permitir su acoplamiento.

Resolvimos que una vez se acoplan uno al otro, el camión y el arrastre constituyen "una sola unidad móvil que debe ser considerada un vehículo de motor a los fines de la citada Sec. 13-101 de la Ley de Vehículos y Tránsito". *González* v. *Seatrain Lines of P.R.*, supra, pág. 496–497. Aparte del diseño y naturaleza de cada uno, como determinantes de que al unirse constituyen un solo vehículo de motor, señalamos el propósito legislativo al aprobarse la citada Sec. 13-101 de que, siendo un vehículo de motor "un instrumento altamente peligroso", "[la] seguridad de los ciudadanos tanto en cuanto a su persona como en cuanto a sus propiedades, requiere que el Estado tome toda clase de medidas no sólo para reducir las causas de accidentes de vehículos de motor, cuya incidencia es alarmante, sino también proveer el derecho a la

adecuada compensación a aquellos que sean víctimas de estos accidentes". 13 Diario de Sesiones de la Asamblea Legislativa 1312. (1960).

■ El compresor de aire a que se refiere el caso ante nos no fue diseñado para transportar carga. Pero es un equipo pesado, con dos ruedas con sus llantas de goma y una extensión metálica que termina en una argolla para ser asida a un remolque. (¹) Si bien cumple su propósito de manera estacionaria, fue diseñado para ser desplazado de un sitio a otro no como carga y sí como un vehículo acoplado a un remolque.

Los autos ante nos no revelan qué tipo de vehículo era el Ford que arrastraba al compresor en el momento del accidente. No parece que fuera un vehículo específicamente diseñado como remolcador. Pero es un hecho innegable que se utilizó para proveer al compresor sobre ruedas la fuerza motriz necesaria para transportarlo de un lugar a otro.

La razón principal de nuestro razonamiento en *González v. Seatrain Lines of P.R.*, supra, —protección de la seguridad pública— se frustraría si hiciéramos distinción entre la naturaleza y diseño de los vehículos que acoplados entre sí a diario circulan por nuestras vías públicas.

Señalamos en *González v. Seatrain Lines of P.R.*, supra, pág. 501, citando a *Cordero Santiago v. Lizardi Caballero*, 89 D.P.R. 150, 158 (1963), que la Sec. 13-101 de la Ley de Vehículos y Tránsito "se adoptó para dar mayor garantía a las personas que son víctimas de accidentes en nuestras vías públicas de que los daños que sufran les sean reparados". Y citando de *McGee Quiñones v. Palmer*, 91 D.P.R. 464, 470 (1964), expresamos el propósito legislativo de "trasladar la carga de los daños a aquella parte que está en mejor posición para soportarla".

■ No podemos ignorar que si peligrosas son las unidades móviles compuestas por los vehículos de arrastre y los

---

(¹) Así puede verse en las fotografías unidas a los autos originales.

camiones remolcadores, no menos peligrosas resultan cuando uno solo de los vehículos o ninguno está diseñado para desplazarse ayuntado a otro. Es de esperarse que haya más seguridad en mecanismos de enganche de vehículos diseñados para acoplarse unos a otros que en aquellos que se acoplan por conveniencias ocasionales. En conclusión y por las razones expresadas, si a un vehículo de motor se unen otras unidades para ser propulsadas y desplazarse juntas por nuestras vías públicas, el conjunto constituye un solo vehículo de motor y el dueño de cada unidad es solidariamente responsable con los demás bajo aplicación de la Sec. 13-101 de la Ley de Vehículos y Tránsito.

—B—

El planteamiento sobre prescripción queda resuelto con lo expresado sobre la solidaridad en la responsabilidad de los dueños de las unidades que constituían el vehículo de motor causante del accidente. La interrupción extrajudicial de la prescripción en cuanto a Casco Sales Co., Inc. perjudica por igual al codemandado Rivera y a la tercera demandada Borinquen Swimming Pools, Inc. en virtud del Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304. Véase *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951).

III

Por los razonamientos aquí consignados, *se expedirá el auto de certiorari solicitado y se dictará sentencia que confirme en todas sus partes la dictada por el Tribunal Superior, Sala de San Juan, objeto de este caso.*

El Juez Presidente Señor Trías Monge no intervino.